IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA FAYE JONES-VANCE, | ) | CASE NO. 1:19-CV-01948 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |
| | ) | |

Plaintiff, Brenda Jones-Vance ("Plaintiff" or "Jones-Vance"), challenges the final decision of Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends the Commissioner's final decision be AFFIRMED.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

**I. PROCEDURAL HISTORY**

In November 2016, Jones-Vance filed an application for DIB, alleging a disability onset date of December 17, 2015 and claiming she was disabled due to osteoarthritis, bulging disc, sciatica, Takayasu's arteritis, high cholesterol and degenerative disc disease. (Transcript ("Tr.") at 160-61, 189.) The applications were denied initially and upon reconsideration, and Jones-Vance requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 123-24.)

On June 8, 2018, an ALJ held a hearing, during which Jones-Vance, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.* at 31-61.) On July 31, 2018, the ALJ issued a written decision finding Jones-Vance was not disabled. (*Id.* at 101.) The ALJ's decision became final on June 25, 2019, when the Appeals Council declined further review. (*Id.* at 1-7.)

On August 26, 2019, Jones-Vance filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 13, 15, 16.) Jones-Vance asserts the following assignment of error:

(1) The ALJ failed to properly evaluate the opinion evidence of record. The ALJ erroneously rejected the opinions of the treating physician and examining occupational therapist in favor of an opinion that was contrary to the ALJ's residual functional capacity.

(Doc. No. 13 at 2.)

**II. EVIDENCE**

**A.  Personal and Vocational Evidence**

Jones-Vance was born in March 1954 and was 64 years-old at the time of her administrative hearing, making her a "person of advanced age" under social security regulations. (Tr. 74, 160.) *See* 20 C.F.R. §§ 404.1563 & 416.963. She completed two years of college education and is able

to communicate in English. (Tr. 38.) She has past relevant work as a Nurse Supervisor and Nurse Instructor. (*Id*. at 100.)

**B.     Relevant Medical Evidence[2] - Physical Impairments**

At a physical therapy visit in September 2015, Jones-Vance reported that a TENS unit relieved "all of her pain" and she was issued one for home use. (*Id*. at 260.) She performed exercises without an increase in pain. (*Id*.)

An examination in February 2016, the examiner recorded Jones-Vance had a normal gait, normal reflexes, and grossly intact sensation. (*Id*. at 253.)

On March 30, 2016, Jones-Vance was seen at the Cleveland Clinic for treatment of back pain and headaches. (*Id*. at 249.) She reported that her back pain had been worsening for the last six months, and now radiated up both sides of her chest and down to her thighs. (*Id*.)

On January 4, 2017, Jones-Vance was evaluated by Dr. Dorothy Bradford, at the request of the Social Security Administration. (*Id.* at 242.) Jones-Vance reported that she had experienced back pain since 2000 when she sustained an injury at work. (*Id.* at 244.) Dr. Bradford opined that Ms. Jones-Vance should not lift over 50 pounds. (*Id.*) Dr. Bradford referred Ms. Jones-Vance to the Women's Diagnostic Center for an examination of her lumbar spine. (*Id.* at 298.) That exam showed distal arthritis including L4-5 anterolisthesis. (*Id.*)

On July 12, 2017, Jones-Vance was evaluated by Dr. Maria Buzanowska at the request of her treating physician, Dr. Andrei Brateanu. (*Id.* at 324.) Dr. Buzanowska observed Jones-Vance's

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. Jones-Vance did not allege any mental impairments in her disability application, and none are addressed in the parties' Briefs.

posture and spinal curves were normal, but her gait was slow and antalgic, and her lumbar range of motion was restricted. (*Id.* at 326.)

On July 15, 2017, imaging of her knees showed osteoarthritis bilaterally with a small right knee joint effusion. (*Id.* at 318.) Imaging of her lumbar spine taken the same day showed degenerative changes in the lumbar area with subluxations within the lower lumbar spine. (*Id.* at 320.)

On August 9, 2017, Jones-Vance received a physical therapy evaluation for treatment of her low back pain. (*Id*. at 331.) Physical therapist Julie Gruden noted Ms. Jones-Vance presented with back pain and impairments including decreased range of motion, strength, and functional mobility, and showed moderate limitations in her lumbar range of motion, decreased lower extremity strength and decreased functional mobility. (*Id*. at 333-34.) Treatment notes described her as "independent in all home and community activities" and "demonstrated complete independence in shopping centers" (*Id*. at 332.) A twelve-visit plan of care was recommended. (*Id.*)

On August 18, 2017, Jones-Vance underwent a physical capacity evaluation at the Cleveland Clinic. (*Id*. at 337.) The occupational therapist Lisa Higginbotham opined that Ms. Jones-Vance gave full effort during testing, and was limited to sedentary physical activity because she was only able to lift 10 pounds or slightly less, was limited in her ability to stand and sit, and needed to avoid any bending, repetitive kneeling, or squatting. (*Id*. at 338.) OT Higgenbotham noted that Jones-Vance demonstrated the ability to perform forward reaching, fine coordination, pinching, and simple grasping with frequent tolerance. (*Id*.) She opined that Jones-Vance could work part-time and perform sitting up to four hours and standing for up to one hour throughout her workday. (*Id*.)

On August 16, 2017, Jones-Vance returned for physical therapy and reported feeling slightly more mobile after a therapy session. (*Id.* at 344-48). The physical therapist noted that she could perform all exercises without an increase in symptoms. (*Id.*)

Jones-Vance completed physical therapy on September 29, 2017 (*Id.* at 362.) She reported that "overall she feels that she is improving with mobility." (*Id.*) The objective measures with levels of function showed minimal limitations in lumbar movement, although she reported pain during motion. (*Id.*) PT Gruden described the therapeutic goals as "partially achieved." (*Id.*)

Imaging of Jones-Vance's lumbar spine taken on December 15, 2017, showed grade-two anterolisthesis of L4 and L5 and moderate to severe spinal stenosis to associated chronic disc and bony degenerative change. (*Id.* at 580.) The reviewing physician noted that Jones-Vance's obesity might contribute to her mechanical low back pain, particularly in view of her chronic malalignment. (*Id.*)

On January 25, 2018, Jones-Vance saw Dr. Kevin Harris at the Cleveland Clinic for a 3 month follow up appointment. (*Id.* at 629.) She reported that her back pain was well controlled on ibuprofen. (*Id.*) Examination notes state that she had mild pain to palpation in the lumbosacral spine midline, with normal gait, reflexes, and grossly intact sensation. (*Id.*)

On May 16, 2018, Jones-Vance's treating physician, Dr. Brateanu, completed a medical source statement dated May 16, 2018. (*Id*. at 587.) Dr. Brateanu noted that he began treating Ms. Jones-Vance in August of 2015 and primarily treated her for chronic low back pain. (*Id*. at 584.) He opined that Jones-Vance had the following functional limitations:

- would be off-task 10% of the workday;
- would likely miss 2 days of work per month;

5

- •   could sit for a total of 4 hours and could stand and walk for a total of less than 2 hours;

- •   could lift less than 10 pounds;

- •   could never stoop or crouch; and

- •   could occasionally climb, balance, kneel, or crawl.

(*Id*. at 584-586.)

C.   **State Agency Reports - Physical Impairments**

On January 21, 2017, State Agency reviewing physician Dr. Rannie Amiri opined that Jones-Vance had two severe impairments: osteoarthrosis and allied disorders, and a dysfunction of a major joint. (*Id*. at 69.) Dr. Amiri opined that Jones-Vance had the following functional impairments:

- •   Occasionally lift 20 pounds, and frequently lift 10 pounds;

- •   Stand and/or walk about 6 hours in an 8-hour workday;

- •   Sit about 6 hours in an 8-hour workday;

- •   Frequently climb ramps and stairs, kneel, and crouch;

- •   Occasionally stoop and crawl;

- •   Never climb ladders, ropes, or scaffolds; and

- •   Avoid all exposure to hazards such as machinery and unprotected heights

(*Id*. at 70-72.)

On April 19, 2017, State Agency reviewing physician Dr. David Knierim reviewed the record and concurred with Dr. Amiri's opinions. (*Id*. at 82-85.)

D.   **Hearing Testimony**

During the June 8, 2018 hearing, Jones-Vance testified to the following:

6

- She lives on Euclid Avenue, in Cleveland, with her husband. (Tr. 36.)

- She provided companionship to her mother from the time she learned that she was critically ill until her death in July 2017. She did not provide physical care, just sitting and talking with her. (*Id*. at 37.)

- She is 5 feet 9 inches tall and weighs about 200 pounds. (*Id*.)

- She has been trying to lower her weight by dieting. She tried working out, but she "couldn't handle it." She does a little walking. (*Id*. at 38.)

- She is right handed. (*Id*.)

- She has a driver's license, and drives about once a week to attend church or choir practice. (*Id*.)

- She completed two years of college. (*Id*.)

- She last worked in 2015, at McGregor's Nursing Facility in East Cleveland. (*Id*. at 38-39.)

- During her employment at Eliza Bryant, from 2003-06, she worked as a Nursing Supervisor and teacher. As a teacher, she trained STNAs and provided in-service trainings. On a day-to-day basis, she made rounds checking every floor for safety, making sure the staff was "doing their job," and making sure that everyone had the proper training." If a nurse called off, she would fill in. (*Id*. at 38-40.)

- She holds a Registered Nurse license, which was required for the job. (*Id*. at 40.)

- At Eliza Bryant, most of her day was spent on her feet, approximately 6 out of 8 hours. She lifted at least 25 to 30 pounds. In 2006, she got hurt helping a patient, which was the beginning of her back problems. (*Id*. at 41.)

- She did not have hiring or firing authority, but she could recommend people to her administrator, and her opinion was respected. (*Id*. at 42.)

- From 2007 to 2015 she worked at McGregor as a Staff Nurse. She took care of residents, gave medications, and made rounds for safety. She also made sure staff had come in and were "on their job." At that job, she was on her feet for about 7 hours in an 8 hour day, often pushing a medication cart. She lifted between 30 and 40 pounds. (*Id*.)

- From 2011 to 2012, she worked at the American Red Cross as a teacher for people who wanted to become State Certified Nursing Assistants. That job also required

7

       her to hod a Nursing License. She stood about half the time and lifted 20 to 30 pounds, assembling beds and dummies to use in demonstrations. (*Id*. at 42-43.)

- She had to stop working because the pain in her back got really bad. Even pain medication no longer helped. The pain extends from her upper back to her buttocks and sometimes thighs. (*Id*. at 44.)

- Her pain comes and goes, but she spends the majority of the day in pain - approximately 16 out of 24 hours. On a scale of 1 to 10, she rates her typical pain as a 6 or 7, without medication. (*Id*. at 45.)

- Medication takes the pain down to a 3, but she tries to limit her use of medication to 2 or 3 times a day. (*Id*. at 46.)

- Generally, she can comfortably sit for 15 to 30 minutes before she needs to stand, stretch and walk around. She can comfortably stand for only about 15 minutes, and comfortably walk "down the hallway," or about 10 minutes. (*Id*.)

- She tries not to lift very much, but she thinks she can left about 10 pounds comfortably. (*Id*. at 47.)

- She is blessed with good mental health. (*Id*.)

- Coldness makes her lower back and knee pain worse. (*Id*.)

- Rest makes her pain feel better. (*Id*.)

- Her husband does all the cooking and most of the household chores, although she shares dish-washing duties with him. She takes breaks about every 10 minutes to get them done. She also keeps the bathroom clean, especially the sink. (*Id*. at 47-48.)

- She takes Motrin 3 times a day, and doesn't have any side effects from her medication. She has refused stronger medications because she does not want to become dependant. (*Id*. at 48-49.)

- During her church choir rehearsal and performances, she and a few other ladies are allowed to sit down when necessary. (*Id*. at 49.)

- Outside of church, she has no other hobbies, clubs, or organizations that she participates in. (*Id*.)

- She uses heating pad and a TENS unit to manage her pain, as well as the medication. She also makes sure she has a "better" mattress, and changes position frequently when lying down. (*Id*.)

- She reads a lot now, and enjoys looking at nature. (*Id*. at 50.)

- She tries to sleep 8 to 10 hours a day, including about two naps a day, one in the morning and one in the evening, for about an hour each time. (*Id*.)

- The Red Cross ended their training program, but even if she could find a similar job, she doesn't think she could teach in a classroom without another instructor because she needed to physically help students learn how to assist their patients. (*Id*. at 51.)

The VE testified Jones-Vance had past work as a General Duty Nurse, Nurse Supervisor, and Nurse Instructor. (*Id*. at 53-54.) The ALJ then posed the following hypothetical question:

> [A]ssume a hypothetical individual of Claimant's age and education, with the past three positions that you have described. Further assume that the hypothetical individual is limited as follows: to light, frequent climbing of ramps and stairs; never to climb ladders, ropes, or scaffolds; occasionally stoop; frequently kneel; frequently crouch; occasionally crawl; never to be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. Can that hypothetical individual perform any of the past positions that you've described, as actually performed or generally performed in the national economy?

(*Id*. at 56-57.)

The VE testified the hypothetical individual would not be able to perform Jones-Vance's past work as General Duty Nurse. (*Id*.) However, he testified that she could perform her past jobs as a Nurse Instructor and Nurse Supervisor as generally performed, although not as she actually performed them. (*Id*.)

The ALJ next posed another hypothetical question:

> [A]ssume the same limitations I described in hypothetical #1 and now modify as follows: occasional climbing of ramps and stairs, balance, kneel, crouch; frequent exposure to extreme cold. Can that hypothetical individual perform any of the past positions you've described, as actually performed or generally performed in the national economy?

9

(*Id*. at 57-58.)

The VE testified the hypothetical individual would be able to perform Jones-Vance's past job as a Nurse Instructor as generally performed or as she actually performed it, and her past job as Nurse Supervisor as generally performed, although not as she actually performed it. (*Id*.) The VE further explained that for skilled employment like this, employers generally tolerate three absences, tardies or leaving early in a month, and 20% off task time per day. (*Id*. at 58-59.) However, a hypothetical individual who was limited to four hours sitting and two hours of standing and walking would be precluded from all of Jones-Vance's prior work. (*Id*. at 59.)

## III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at

923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

Here, Jones-Vance was insured on the date beginning the adjudicated period, June 29, 2016,[3] and remained insured through December 31, 2019, her date last insured ("DLI.") (Tr. 94.) Therefore, in order to be entitled to DIB, Jones-Vance must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

---

[3] Jones-Vance filed a prior application for POD and DIB on February 3, 2016. This claim was denied on the initial level on March 16, 2016, and on reconsideration on June 28, 2016. She did not appeal, and the June 28, 2016 denial became a final decision. The ALJ determined that this decision is entitled to *res judicata*, and therefore he only considered Jones-Vance's claim based on the unadjudicated period beginning June 29, 2016. (Tr. 92-93.) Jones-Vance did not contest that determination in this appeal.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since June 29, 2016, the date beginning the adjudicated period.

3. The claimant has the following severe impairments: grade-two anterolisthesis of L4 on L5 and moderate-to-severe spinal stenosis related to associated chronic disc and bony degenerative change; osteoarthritis of the bilateral knees with small ossific densities and calcification of meniscus in the right knee; essential hypertension; Takuyasu's arteritis; and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; and frequently be exposed to extreme cold.

6. The claimant is capable of performing past relevant work as a nurse supervisor and nurse instructor as generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2016, through the date of this decision.

(Tr. 95-101) (citations omitted).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See*

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v.*

*Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10 cv 734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10 CV 017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09 cv 1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. The ALJ's Evaluation of Opinion Evidence

Jones-Vance asserts that the ALJ failed to properly evaluate the opinion evidence of record, because he "erroneously rejected" the opinions of the treating physician, Dr. Brateneau, and examining occupational therapist Lisa Higginbotham. (Doc. No. 13 at 2.) She also asserts that he erred by giving greater weight to the opinion of a consultative examiner, Dr. Bradford, who provided an opinion that she alleges is "completely contradictory" to the ALJ's finding of residual functional capacity. (*Id.* at 6.) She argues that the ALJ's "improper and confusing evaluation"of the opinion

14

evidence in this case makes proper review impossible, and requests remand to address the perceived inconsistencies. (*Id.* at 10.)

The Commissioner responds that the ALJ reasonably assessed the opinions of record and supported his weighing of the opinions with substantial evidence. (Doc. No. 15 at 5.) In particular, he notes that the decision to give "little weight" to the opinion of Jones-Vance's treating physician was properly based on the physician's representation that he did not believe the limitations included in his opinion lasted or would last longer than 12 months, and that those limitations were inconsistent with other medical record evidence as well as the activities of daily living she could actually perform. (*Id.* at 6-8.)

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).[4] However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[5] *See also Gayheart*, 710 F.3d at 376 ("If the Commissioner

---

[4] Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (March 27, 2017). Jones-Vance filed her application in November 2016.

[5] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the

does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id*. § 404.1527(c)(2)-(6).")

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). *See also Gayheart*, 710 F.3d at 376. The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good

---

relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.[6]

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

### 1. The Opinion of Dr. Bratenau

Here, the ALJ devoted a paragraph to his assessment of Dr. Bratenau's opinion:

---

[6] "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6)." *Gayheart*, 710 F.3d at 376.

> As for the opinion evidence, Andrei Bratenau, M.D. completed a medical source statement on the claimant's behalf on May 16, 2018. First, Dr. Bratenau opined that the claimant would be off task for 10% of the day and would miss two days of work per month due to her conditions. Dr. Bratenau opined that the claimant could sit for more than two hours at a time; stand for an hour at a time; sit for about four hours of an eight-hour workday; and stand or walk for less than two hours of an eight-hour workday. Next, Dr. Bratenau opined the claimant could rarely lift less than ten pounds; occasionally climb, balance, kneel, and crawl; and never stoop or kneel.[7] Dr. Bratenau did not list the medical findings that supported this. Dr. Bratenau stated the claimant could perform activities like shopping; travel without a companion for assistance; walk a block at a reasonable pace on rough or uneven surfaces; climb a few steps at a reasonable pace with the single use of a hand rail; use standard public transportation; prepare a simple meal and feed herself; care for personal hygiene; and sort, handle and use paper files. Finally, Dr. Bratenau indicated the limitations he found have not lasted and will not last twelve consecutive months. The opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. A treating physician's medical opinion on the issue of the nature and severity of an impairment is entitled to special significance and, when supported by the medical evidence of record, is entitled to controlling weight. The undersigned gives these opinions limited weight. First, Dr. Bratenau did not believe the limitations he had listed had or would last twelve consecutive months. Next, the limitations are not supported by the medical record as detailed above. The claimant had generally unremarkable physical examinations and responses to conservative treatment. The findings are also internally inconsistent with the activities Dr. Bratenau opined the claimant could perform.

(Tr. 98-99) (internal citations omitted).

As the ALJ indicates, Dr. Bratenau left blank the section of the opinion form which requested that he identify the particular medical or clinical findings which supported his assessment. (*Id.* at 587.) He further indicated that his findings were limited to a period of less than twelve consecutive months, suggesting that he believed Jones-Vance's condition had previously been better, and would improve in the future. This means that even if the ALJ gave controlling weight to Dr. Bratenau's opinion, it could not, alone, be the basis for a finding of disability. Therefore, the ALJ

---

[7] The ALJ's description of opinion errs in that Dr. Bratenau did not opine that Jones-Vance could never kneel. He opined that Jones-Vance could occasionally climb, balance, kneel, or crawl; and never stoop or crouch. (Tr. 585.)

rightly looked to the medical record evidence, which showed, as the ALJ noted, that physical therapy, received in August and September 2017, and Motrin were effectively controlling Jones-Vance's pain and increasing her mobility. (*Id.* at 97.) In the medical records described in the ALJ's opinion, there is no support for extending the severe limitations Dr. Bratenau described as temporary for a longer period. On the contrary, the record contains numerous examples of greater functional capacity. For example:

- At a September 11, 2017 examination, after a month of physical therapy, her gait was described as "normal." (*Id.*)

- Jones-Vance told her examiner at a January 21, 2018 appointment that her back pain was "well controlled" on her ibuprofen, and her physical examination revealed only "mild" pain to palpation in the lumbosacral spine midline and obesity. (*Id.*) All other examination findings were unremarkable. (*Id.*)

Jones-Vance points to other examination records that she feels show greater impairment, and points out that OT Higgenbotham's assessment, supports Dr. Bratenau's opinion. (Doc No. 13 at 9-10; Doc. No. 16 at 3.) The ALJ also devoted nearly a page to assessing the opinion of OT Higgenbotham, which was based on a physical capacity assessment of Jones-Vance on August 18, 2017. (Tr. 99.) As the ALJ noted, OTs are not "acceptable medical sources," and thus their opinions are not entitled to the deference of a treating source opinion. Further, even if Higgenbotham were an "acceptable source" under the regulations, she only saw Jones-Vance for a single evaluation, and therefore cannot qualify as a treating source. (*Id.*) Although the ALJ gave OT Higgenbotham's opinion "little weight," even given "great weight" it would only be a snapshot of Jones-Vance's functional capacity at a single moment in time, early in her physical therapy.

None of the records Jones-Vance cites establish the continuous twelve-month period of disability that is critical here, and that Dr. Bratenau opined was not present. Where there is

conflicting evidence in the record, as in this case, it is the role of the ALJ, and not this Court, to resolve those conflicts. *Buxton*, 246 F.3d at 772-3. The ALJ cited substantial evidence supporting his assignment of "little weight" to the opinions of Dr. Bratenau and OT Higgenbotham, and this Court gives deference to those determinations.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends the Commissioner's final decision be AFFIRMED.

      *s/Jonathan D. Greenberg*
      Jonathan D. Greenberg
      United States Magistrate Judge

Date: April 24, 2020

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985),** ***reh'g denied*, 474 U.S. 1111 (1986).**